# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC M. CARRINGTON, | ) |
| Plaintiff, | ) |
| v. | ) 2:07cv967 |
| | ) **Electronic Filing** |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

September 29, 2008

## I. INTRODUCTION

Plaintiff, Eric M. Carrington ("Plaintiff"), brings this action pursuant to 42 U.S.C. § 1383(c)(3) seeking review of the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") denying plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 1381-1383(f).

## II. PROCEDURAL HISTORY

Plaintiff filed an application for SSI benefits on June 23, 2004, alleging disability since August 15, 2001, due to asthmatic bronchitis, tachycardia, high blood pressure, depression, ulnar nerve damage, plates and pins in ankle, chronic obstructive pulmonary disease ("COPD"), and vocal cord dysfunction. (R.258-260, 262). Plaintiff's claim was initially denied, and he filed a timely request for an administrative hearing. (R. 230). A hearing was held on April 3, 2006, in Latrobe, Pennsylvania, before Administrative Law Judge John Porter ("ALJ"). (R. 521-551). Plaintiff was represented by counsel, E. David Harr, Esquire, and appeared and testified. *Id.* An impartial vocational expert ("VE"), was also present and gave testimony. *Id.* The ALJ issued an unfavorable decision on June 28, 2006, finding that plaintiff was "not disabled" within the

meaning of the Social Security Act.[1] (R. 13-20). The ALJ's decision became the Commissioner's final decision when, on June 1, 2007, the Appeals Council denied Plaintiff's request for review. (R. 6-9). Administrative remedies thus being exhausted, Plaintiff brings the instant matter before this court, seeking judicial review of the Commissioner's decision. The parties have filed cross motions for summary judgment together with supporting briefs under Rule 56 of the Federal Rules of Civil Procedure, and the record has been developed at the administrative level. The matter is now poised for disposition.

### III. STATEMENT OF THE CASE

Plaintiff was born on May 31, 1965, making him thirty-six (36) years old at the onset of the alleged disability and forty (40) years old on the date of the administrative hearing. (R. 258, 521-551). Under the Commissioner's regulations, applicants under the age of fifty (50) are considered "younger individuals" and their age is not considered a significant impediment to adapting to new work situations. 20 C.F.R. § 416.963.

There is some discrepancy in the record as to Plaintiff's educational background. On a disability report he indicated that he had completed the twelfth grade. (R. 278). Plaintiff testified at the hearing to only having completed the ninth grade, however, and to having attended special education classes. (R.525-526). Likewise, Plaintiff reported to Peter Saxman, Ph.D., ("Dr. Saxman") during a consultative examination that he quit school after ninth grade and was in special education classes. (R. 509).

No past relevant work is discernable in the record, although plaintiff reports having done some construction work from 1993 until 1998. (R. 263, 273). Plaintiff attributed the cessation of his work activity to his medical condition. (R. 272). From 2000 until 2004, Plaintiff was a guest of the state at SCI Somerset. (R. 268).

---

[1] An individual is considered to be "disabled" if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also 42 U.S.C. § 423(d)(1)(A)(using almost identical language).

Plaintiff's medical history reveals treatment for asthma, COPD, right ankle fracture, and left elbow injury. (R. 318-320). Plaintiff's asthmatic bronchitis was evaluated and treated by Raymond F. Nino, M.D., ("Dr. Nino"), Jayesh B. Desai, M.D., ("Dr. Desai"), a physician's assistant in the prison medical office, and emergency room personnel. (R. 317, 355, 416, 456). Although Plaintiff's condition became exasperated at times, the treatment records consistently note that Plaintiff's asthma was stable and controlled with medication. *Id.*

Plaintiff's COPD was treated by Dr. Nino and Dr. Desai, as well as emergency room personnel. (R. 316-317, 387, 404-405, 445-446). In August 2004, Dr. Nino reported that, partly due to his COPD, Plaintiff was temporarily disabled. (R. 506). On September 14, 2005, Plaintiff was treated in the emergency room for, among other things, exacerbation of COPD. (R. 445-446). Dr. Nino diagnosed acute exacerbation of COPD on September 30, 2005. (R. 387).

Dr. Desai, a pulmonologist, examined Plaintiff on January 6, 2003, and reported no respiratory distress with no wheezing or edema. (R. 316). Plaintiff had oxygen saturation of 97% with diminished but clear air exchange. (R. 317). Dr. Desai diagnosed vocal cord dysfunction with abnormal mobile vocal cords, and advised Plaintiff to continue speech therapy and to avoid smoking. *Id.*

In 1997, Plaintiff fractured his right ankle. (R. 319). The fracture was set with a tibial plate and screws. *Id.* Anne C. Sullivan, M.D., ("Dr. Sullivan") treated Plaintiff for complaints of pain in his right ankle on September 22, 2003. *Id.* Dr. Sullivan diagnosed hardware irritation and administered a trial injection of Kenalog and Xylocaine. *Id.* In December 2003, Plaintiff was seen again for pain in his right ankle. (R. 335). It was noted that the screws from the tibial plate were close to the skin surface. *Id.* Dr. Sullivan saw Plaintiff on February 9, 2004, and concluded that the problem was a skin care issue. (R. 319). Dr. Sullivan advised Plaintiff to use antibiotic gel and a "moleskin donut" and to avoid wearing shoes that abrade the area to alleviate the condition. (R. 319, 332). On March 15, 2004, Dr. Sullivan observed Plaintiff's tibial plate screws to be properly positioned and that his abrasions had closed. (R.318). X-rays of Plaintiff's right ankle were taken on January 9, 2005, showing no acute fractures, a complete healing of the previous fibular fracture, and an intact screw plate device. (R. 382). Plaintiff was treated in the

emergency room on July 23, 2005, for a sprained right ankle. (R. 492, 495). X-rays showed no acute bony abnormalities. (R. 502-504). Plaintiff returned to the emergency room two days later, on July 25, 2005, again complaining of pain in his right ankle. (R. 481). Plaintiff was diagnosed with acute calf strain. (R. 484). Plaintiff was again treated in the emergency room on August 15, 2005, after being assaulted. (R. 454). Plaintiff's right ankle x-ray showed no acute fractures. (R. 469).

On November 14, 1997, Mark Baratz, M.D., ("Dr. Baratz"), operated on Plaintiff's left arm to fix an existing non-union fracture with a plate and screws. (R. 160-161). In December 2002, Plaintiff was involved in some manner of event at the prison in which his left elbow was re-injured. (R. 320). On January 10, 2003, Dr. Sullivan examined Plaintiff for follow-up on his more recent left elbow injury and noted bruising to the ulnar nerve. *Id.* On April 14, 2003, Jonathan L. Kates, M.D., observed that an EMG performed on Plaintiff revealed ulnar neuropathy. *Id.* A CT scan was performed on Plaintiff's left arm on February 25, 2004, and revealed a healed and stabilized fracture of the distal left humerus with plate and screws and no acute process. (R. 360). On March 17, 2004, Dr. Baratz indicated that Plaintiff was a candidate for elbow release surgery and transposition of the ulnar nerve, which, in his opinion, could be done at any time. (R. 321).

Dr. Saxman conducted a clinical psychological disability evaluation on Plaintiff on May, 29, 2006, at the behest of the Commissioner. (R. 508-512). Dr. Saxman diagnosed Plaintiff with major depression, severe with psychotic features, and panic disorder with agoraphobia based on his examination of Plaintiff. (R. 510-511). Additionally, Plaintiff's medical history includes diagnoses of depression and being prescribed antidepressants and anti-anxiety medicines. (R. 311, 316-317, 323, 387, 390, 391).

Dr. Saxman's report also denotes that he administered an Individual Intellectual Evaluation for Disability ("WAIS-III") test to Plaintiff. (R. 512). The results of the WAIS-III realized a Verbal IQ score of 58, Performance IQ score of 56, and Full Scale IQ of 53. *Id.* Dr. Saxman stated in his report that these test results were a valid estimate of Plaintiff's current intellectual functioning. *Id.* The results placed plaintiff in the mild to moderate range of mental

retardation. *Id*.

Plaintiff's medications include Advair, Ativan, Cardizem[2], Catapres, Elavil, Preventil, Prozac, QVAR Inhaler, Theo-dur,Vicodin, and Zanax. (R.267-268).

Plaintiff claims to be completely incapable of performing any household chores due to his condition. (R. 284-294). Neither can he do his own grocery shopping. *Id.* He can not drive, but is capable of using public transportation. *Id.* Plaintiff's daily activities include watching television, listening to the radio, and talking to his friends. *Id.* Due to the fatigue Plaintiff experiences as a result of taking his medications, he typically sleeps about 12-14 hours per day. (R. 538-539).

At the administrative hearing, the testimony of the VE indicated that a hypothetical individual sharing Plaintiff's vocational characteristics and limited to sedentary work that could be performed with one dominant upper extremity; did not require balancing, stooping, kneeling, crouching, crawling, or climbing ladders, ropes, or scaffolds; did not require even moderate exposure to fumes, odors, dusts, gases, environments with poor ventilation, hot or cold temperature extremes, extreme wetness, or humidity; and was limited to simple, routine, repetitive tasks not performed in a production or quota-based environment involving only simple work-related decisions and, in general, few work place changes, could perform work existing in the national economy as a surveillance system monitor or a product inspector.[3] (R. 546-547).

After determining that Plaintiff had not engaged in substantial gainful activity since his protective filing, the ALJ acknowledged that Plaintiff has the severe impairments of residuals of a non-displaced radial neck fracture, moderate degenerative changes of the right ankle, residuals of a right tibia/fibula fracture, asthma, and depression. (R. 15). The ALJ then found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed

---

[2]Believed to be misspelled as "Cartizone" at R. 267.

[3]For purposes of the Act, work "exists in the national economy" if it "exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). "The ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity." *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926). (R. 15). The ALJ determined that Plaintiff maintained the residual functional capacity ("RFC")[4] to engage in work activity at the sedentary level subject to certain modifications allowing for Plaintiff's physical and mental limitations. (R. 16-18). Ultimately, the ALJ concluded that a significant number of jobs existed in the national economy that Plaintiff could perform, considering his age, education, work experience, and RFC, and therefore Plaintiff was not disabled within the meaning of the Act at any time relevant to the rendering of the ALJ's decision. (R. 19).

## IV. STANDARD OF REVIEW

This court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful

---

[4]Residual functional capacity is "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a).

6

activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988) (quoting *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)); 42 U.S.C. § 423(d)(1). A claimant is considered to be unable to engage in substantial gainful activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To support his ultimate findings, an ALJ must do more than state factual conclusions. He must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The ALJ must consider all medical evidence contained in the record and must provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its rulemaking authority under 42 U.S.C. § 405(a), has developed a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 CFR] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determined whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimants age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)(footnotes omitted).

## V. DISCUSSION

Plaintiff advances five arguments that the ALJ's determination merits remand by this court. Plaintiff's primordial assignment of error is to the ALJ's adverse credibility determination as to Plaintiff. Second, Plaintiff avers that the ALJ failed to provide persuasive contradictory evidence in rejecting the opinions of Plaintiff's treating medical sources. The tertiary argument proffered by Plaintiff is that the ALJ erred at step two in finding that Plaintiff's COPD, hypertension, vocal cord dysfunction, moderate mental retardation, and panic disorder with agoraphobia were not severe impairments. Penultimately, Plaintiff maintains that the ALJ erred in determining that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments. Finally, Plaintiff avows that the ALJ's RFC determination and style in which hypothetical questions were propounded to the VE was too broad in the first instance and too limited in the second instance. The Court will conduct a seriatim analysis of Plaintiff's challenges to the ALJ's decision.

First, Plaintiff contends that the ALJ's adverse credibility determination with respect to plaintiff was merely a conclusory statement and not based upon substantial evidence. Essentially, Plaintiff argues that his credibility is established by the fact that his subjective complaints in the record are consistent and long-standing and that his self-described daily activities are congruous with his impairments and do not tend to show adaptability to a working environment. Furthermore, Plaintiff asserts that the ALJ's reliance on the record was selective and biased. This Court can not agree with Plaintiff's position. Far from making a single conclusory statement about Plaintiff's credibility, after acknowledging that the Plaintiff's medically determinable impairments could produce the alleged symptoms, the ALJ found that Plaintiff's statements regarding the intensity, duration and limiting effects of the symptoms were not entirely credible. He then undertakes a comprehensive analysis of the medical evidence of record in the next ten paragraphs in which, *inter alia*, he explains his credibility finding. This Court disagrees with Plaintiff's charge that the ALJ's citation to the record was impermissibly selective. The ALJ takes each impairment separately, and explains his reasons for his findings. The Court does not find sufficient objective medical evidence of record to undermine the ALJ's

finding.  Moreover, the ALJ has authority to make credibility determinations. *Van Horn v. Schweiker,* 717 F.2d 871, 873 (3d Cir. 1983).  "Because he had the opportunity observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989-90. (4th Cir. 1984). The ALJ's credibility determinations need only be supported by substantial evidence on the record.  Here, the ALJ considered Plaintiff's subjective complaints and assessed them in the context of the entirety of the medical evidence, determining his statements concerning the effects of the symptoms were not entirely credible.  Therefore, substantial evidence supports the ALJ's credibility determination.

Plaintiff next takes issue with the ALJ's failure to credit treating source opinions contained in the record, specifically those of Dr. Nino and Dr. Saxman.  Plaintiff claims that the record lacks persuasive contradictory evidence to support the ALJ's dismissal of these reports.  Again the court can not concur.  With respect to the record evidence attributable to Dr. Nino, the ALJ does not discredit Dr. Nino's opinions except one in which Dr. Nino concludes that Plaintiff was temporarily disabled between August 17, 2004, and February 16, 2005, due to Plaintiff's non-union fracture of his left arm.  The ALJ explained his reason for discounting this conclusion.  Additionally, the court notes that, even had the ALJ accepted this determination, it does not meet the 12-month durational requirement for disability under the Act. 20 C.F.R. § 416.905(a).  Furthermore, a treating physician's opinion that a claimant is "disabled" or "unable to work" is not dispositive or entitled to special deference. See *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994); 20 CFR §§ 404.1527(e), 416.927(e).

The ALJ afforded no weight to Dr. Saxman's consultative psychological evaluation because the ALJ found that the totality of the evidence failed to support Dr. Saxman's findings.  The ALJ observed that Dr. Saxman's conclusions were based on plaintiff's subjective statements, which were found to be in contradistinction to the other evidence of record.  The ALJ noted that the state agency medical consultant evaluating the record evidence concluded that plaintiff had no mental impairment.  The ALJ likewise rejected the validity of the IQ scores reported by Dr. Saxman as bearing against the weight of the record evidence.  The court finds that the ALJ's

9

decision is predicated upon his analysis of the evidence contained in the record.  This court can not say that the evidence is not substantial.  Nor can it be said that the ALJ's conclusion is unreasonable.  Accordingly, it is not the province of this court to disturb those findings on review, but rather to defer to the ALJ's decision when those findings are supported by substantial evidence. See *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)(quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

Plaintiff's third assignment of error is that the ALJ improperly determined that Plaintiff's COPD, hypertension, vocal cord dysfunction, moderate mental retardation, and panic disorder with agoraphobia were not severe impairments at step two of the sequential evaluation.  Plaintiff argues that such a finding is inconsistent with the Regulations and long standing case law that only "groundless claims" are to be considered non-severe.  Plaintiff contends that the ALJ's findings as to these impairments are belied by evidence in the record and Plaintiff's testimony.  Plaintiff argues that the severe impairment determination is a *de minimis* standard.  Plaintiff maintains that an impairment is only non-severe when its effect on an individual's ability to work is minimal or non-existent.  Plaintiff further stresses that a determination that an impairment is not severe should rarely be used as a basis for denying benefits and that reasonable doubts as to severity should be resolved in the claimant's favor.  Plaintiff contends that a decision that an impairment is not severe at this step should be reviewed with close scrutiny.

Plaintiff's argument, although true, is irrelevant in this case.  The Regulations and the case law address the situation where benefits are denied at step two because an impairment is determined to be non-severe.  Plaintiff's case, however, is readily distinguishable for the obvious reason that benefits were denied at step five of the sequential evaluation process, not at step two.  The ALJ did find that Plaintiff had the severe impairments of residuals of a non-displaced radial neck fracture, moderate degenerative changes of the right ankle, residuals of a right tibia/fibula fracture, asthma, and depression, but found that Plaintiff's impairments of COPD, hypertension, vocal cord dysfunction, moderate mental retardation, and panic disorder with agoraphobia lacked

sufficient evidentiary support to be considered severe. The ALJ then thoroughly conducted the remaining steps of the evaluation process in reaching a determination that Plaintiff is not entitled to the benefits he seeks. This is fully in accordance with the Regulations and applicable case law. Although a finding that an impairment is not severe at step two resulting in a denial of benefits at that stage "is certain to raise a judicial eyebrow,"[5] merely finding that an alleged impairment lacks sufficient severity to be considered synchronously with other severe impairments in reaching a decision is not subject to the same level of lucubration, and the normal deferential standard applies. "The physical or mental impairment must be of a nature and degree of severity sufficient to justify its consideration as the cause of failure to obtain any substantial gainful work." *Bowen v. Yuckert*, 482 U.S. 137, 147 (1987)(citations omitted). Plaintiff bears the burden of proving his impairments are sufficiently severe to satisfy the standard. *See Id*. at 146 n. 5. This Plaintiff has failed to do. The evidence contained in the record fails to indicate that these impairments significantly limit Plaintiff's ability to perform basic work activities. The ALJ's findings on this point, therefore, will not be disturbed on this appeal.

Plaintiff's next allegation of error is that the ALJ improperly found that his impairments, either alone or in combination, did not meet or medically equal any of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926). Plaintiff asserts that the ALJ's finding lacks evidentiary support and that the ALJ substituted his own medical opinion for that of the medical professionals submitting reports for the record. The remainder of Plaintiff's argument under this assignment of error consists of reiterating the evidence present in the record and insisting that such evidence mandates reaching the antipodean result, an undertaking that would be helpful if this court were empowered to re-weigh the evidence of record, but it is not. In his step three finding, the ALJ determined that Plaintiff is not disabled *per se*, as none of his impairments reached listing level severity. The ALJ considered Plaintiff's impairments under listings 1.02, 1.07, 3.03, 12.04, and 12.05B. He then explained why Plaintiff's condition failed to meet at least one requirement under each one. The court finds

---

[5]*McCrea v. Commissioner*, 370 F.3d 357, 361(3d Cir. 2004).

11

Plaintiff's allegation that the ALJ merely made conclusory statements without sufficient rationale to support his findings to be unsound. While it is true that the ALJ's discussion of medical evidence from the record in this section is somewhat abbreviated, the court could only charge error for that omission if required to read each finding in the ALJ's report in a vacuum. As far as the Court is aware, such a requirement has not been recognized by the Third Circuit or the Supreme Court. In a thoughtful and well-reasoned eight page decision, the ALJ conducts a thorough and comprehensive review of the medical evidence contained in the record. Although the analysis of the medical evidence appears in places in the decision other than under the step three finding, the Court recognizes that it applies with equal force to that section. The ALJ must set out a specific factual basis for each finding. *Baerga v. Richardson*, 500 F.2d 309 (3d Cir. 1974). The Court finds that the ALJ has done so here. The ALJ's decision is predicated upon his analysis of the evidence contained in the record. This Court can not say that the evidence is not substantial. Nor can it be said that the ALJ's conclusion is unreasonable. Therefore, the Court finds no error in the ALJ's step three analysis.

Plaintiff's final challenge to the ALJ's decision is that the RFC determination at step five of the sequential analysis was compromised by the ALJ's failure to recognize the full panoply of Plaintiff's impairments as evinced by the evidence of record. Plaintiff further contends that this error occasioned the validity of the hypothetical questions posed to the VE to be compromised. Plaintiff again undertakes a thorough recitation of the evidence of record, as if such an argument could properly inform this opinion. Despite Plaintiff's insistence to the contrary, the Court finds that the ALJ did give due heed to the evidence before him. The Court notes that the ALJ's RFC determination encompasses Plaintiff's respiratory problems, impairment of the left upper extremity, ambulatory deficiency, and mental impairments in concluding that Plaintiff was capable of performing sedentary work subject to certain modifications that account for his infirmities. Plaintiff bears the burden of showing that he lacks the RFC ascribed by the ALJ. See *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). This Plaintiff has failed to do. Because the Court finds that the ALJ's RFC determination is supported by substantial evidence and is not unreasonable, that finding will not be disturbed. Furthermore, hypothetical questions to a

vocational expert must accurately reflect all of a claimant's credibly established limitations. See *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). As such, the ALJ may exclude limitations that are "reasonably discounted" by the evidence. *Rutherford*, 399 F.3d at 555. Because the Court holds that the ALJ's hypothetical questions to the VE properly encompassed all of Plaintiff's impairments supported by objective medical evidence in the record and was not unreasonable, the Court is constrained to find that the ALJ's reliance on the VE's testimony to be likewise not unreasonable.

## VI. CONCLUSION

For all of the foregoing, the decision of the ALJ is affirmed, and the Commissioner's motion is granted. Plaintiff's motion is denied. An appropriate order shall issue.

s/ David Stewart Cercone  
David Stewart Cercone  
United States District Judge

cc:  E. David Harr, Esquire  
     203 South Main Street  
     Greensburg, Pennsylvania 15601  

     Lee Karl  
     Assistant U.S. Attorney  
     Western District of Pennsylvania  
     U.S. Post Office & Courthouse  
     700 Grant Street, Suite 4000  
     Pittsburgh, Pennsylvania 15219